Keith W. Heard (KH-8578)
Michael J. Walsh (MW-6578)
Burke & Parsons
100 Park Avenue
New York NY 10017-5533
(212) 354-3800

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JUDGE HOLWELL

06 CV 12985

| | |
|---|---|
| **SK SHIPPING CO. LTD.**<br>**Plaintiff,**<br>**-against-**<br>**EASTRADE COMMODITIES INC.**<br>**Defendant.** | **VERIFIED COMPLAINT** |

Plaintiff SK SHIPPING CO. LTD. (hereinafter "Plaintiff"), by its attorneys Burke & Parsons, as and for its Verified Complaint against defendant EASTRADE COMMODITIES INC. (hereinafter "Defendant" and/or "Eastrade"), alleges upon information and belief as follows:

1. This is an admiralty and maritime claim within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure in that it involves a claim for the breach of certain maritime contracts. This action also falls under the Court's admiralty and maritime jurisdiction pursuant to 28 U.S.C. § 1333. Finally, this Honorable Court also has jurisdiction over this matter pursuant to 28 U.S.C. § 1331 because the action also arises under the New York Convention on the Recognition and Enforcement of Foreign Arbitral Awards, codified at 9 U.S.C. § 201 *et seq.* and/or the Federal Arbitration Act, 9 U.S.C. § 1 *et seq.*

THE PARTIES

2. At all times relevant hereto, SK Shipping Co. Ltd. was and still is a foreign corporation duly organized and existing under and by virtue of the laws of a foreign country with an office and place of business at 19th Floor, SK Namsan Bldg. 267, 5-Ga, Namdaemun-Ro, Chung-Gu, Seoul, Korea.

3. At all times relevant hereto, Eastrade Commodities Inc. was and still is a foreign corporation duly organized and existing under and by virtue of the laws of a foreign country with an office and place of business at Rue du la Gare 28, Case Postale 588, 1260 Nyon 1/VD, Switzerland.

4. Plaintiff's claims arise out of and in connection with two separate voyages performed for Defendant by two vessels under two separate maritime contracts, the first a Contract of Affreightment and the second a voyage charter party.

CLAIMS WITH RESPECT TO M/V GOLDEN LION

5. On February 6, 2003, Plaintiff, as Owner, entered into a Contract of Affreightment ("COA") on the GENCON form with Defendant, as charterer, for the transportation of 500,000 metric tones (10% more or less) of bulk cement. The COA called for a total of 12 shipments from various load ports. The discharge port for each shipment was designated as Port Harcourt, Nigeria. A copy of the COA is annexed as Exhibit 1 to this Verified Complaint.

6. For the ninth voyage under the COA, Plaintiff time chartered the M/V GOLDEN LION from its registered owner to transport a cargo of cement to Port Harcourt.

7. The vessel arrived at Port Harcourt on December 1, 2003, and thereafter discharged cement, some of which was allegedly found to be damaged in the vessel's number 3 hold.

8. Upon information and belief, the receivers of the cement cargo claimed losses and damages to the cargo in the amount of $222,745.00, which Eastrade claimed to have settled for the full amount in November 1974.

9. In its accounting with plaintiff under the COA, Eastrade improperly took a credit as a set off against freight; demurrage; and other items which it otherwise

admitted to be due and owing to plaintiff for the voyage of the GOLDEN LION in the amount of its settlement with the cargo receiver. Documents reflecting the deduction for the cargo claim improperly taken by Defendant are annexed as Exhibit 2 to this Verified Complaint.

10. Despite due demand by Plaintiff, no part of the $222,745.00 owed for freight and demurrage on the voyage of the GOLDEN LION described in paragraphs 7 and 8 above has been paid. The total amount due and owing by Defendant under the COA is and continues to be $222,745.00.

11. As a result of Defendant's withholding of the disputed amount for freight and demurrage, Plaintiff instituted arbitration in London pursuant to the arbitration clause set forth in Clause 38 of the COA. A single arbitrator has been appointed and both Plaintiff and Defendant have participated in the arbitration, which is ongoing. The arbitrator has not yet rendered an award. Plaintiff seeks security for any award that may be rendered in London arbitration on the unpaid claim.

12. In addition to an attachment in the full principal amount of the claim as outlined in paragraph 11 above, Plaintiff also seek an attachment over an additional sum to cover interest as well as its anticipated attorneys' fees and costs, all of which are recoverable in London arbitration.

13. Plaintiff estimates, as nearly as can be computed presently, these additional damages and costs to be $113,707.03, consisting of interest in the sum of $27,843.12 (computed on the principal amount sought at a rate of 5% for a period of 2.5 years – the estimated time frame within which arbitration will be completed), and $85,863.91 estimated U.K. counsel fees, costs, and arbitrators' fees which will be incurred in conjunction with the London arbitration, and which are recoverable there.

14. Based upon the foregoing, therefore, the total sum sought to be attached with respect to Plaintiff's claims with respect to the GOLDEN LION in this action is $336,452.03.

**CLAIMS WITH RESPECT TO M/V ARHIMIDIS SB**

15. On September 16, 2005, Plaintiff as Disponent Owner, entered a Voyage Charter Party on the GENCON form with Defendant as Charterer, for the transportation of a cargo of 30,000 metric tones (10% more or less) of bulk cement.

The charter party called for the cargo to be loaded at Rizhao, China and discharged at Port Harcourt, Nigeria. A copy of this charter party is annexed as Exhibit 3 to this Verified Complaint.

16. Pursuant to the foregoing charter party, the ARHIMIDIS SB commenced loading cargo on September 23, 2005. The vessel completed loading on September 27th and thereafter proceeded to Port Harcourt, Nigeria where she arrived on October 31, 2005. Discharge of cargo was delayed significantly and was not completed until December 20, 2005.

17. Pursuant to Clause 25 of the charter party, Defendant agreed to pay Plaintiff demurrage at the rate of $18,000 per day or pro rata at the loading/discharging port. In accordance with the foregoing clause, Plaintiff presented its invoice to Defendant dated February 9, 2006, in the total amount of $654,448.89 for demurrage incurred on the chartered voyage. A copy of said invoice is annexed as Exhibit 4 to this Verified Complaint.

18. Defendant has not paid the foregoing demurrage invoice despite due demand by Plaintiff. The total principal amount due and owing by Defendant under the charter party is and continues to be $654,448.89.

19. Clause 38 of the charter party for the ARHIMIDIS SB provides for all disputes arising under the charter party to be resolved by arbitration in London, in accordance with English law. Plaintiff seeks security for any award that may be rendered in London arbitration on the unpaid demurrage claim.

20. In addition to an attachment in the full principal amount of the demurrage claim as outlined in paragraphs 18 and 19 above, Plaintiff also seeks an attachment of an additional sum to cover interest as well as its anticipated attorneys' fees and costs, all of which, as noted above, are recoverable in London arbitration.

21. Plaintiff estimates, as nearly as can be computed, these additional damages and costs to be $253,440.53, consisting of interest in the sum of $81,806.00 (computed on the principal amount sought at a rate of 5% for a period of 2.5 years – the estimated time frame within which arbitration will be completed), and $171,634.53 estimated U.K. counsel fees, costs, and arbitrators' fees which will be incurred in conjunction with the London arbitration, and which are recoverable there.

22.  Based upon the foregoing, therefore, the total sum sought to be attached with respect to the Plaintiff's claims with respect to the ARHIMIDIS SB in this action is $907,889.42

23.  For its part, Plaintiff has satisfied and performed all of its obligations under the terms of the COA with respect to the voyage of the GOLDEN LION and under the terms of the charter party with respect to the voyage of the ARHIMIDIS SB described above.

24.  Upon information and belief, and after investigation, the Defendant cannot be "found" within this District for the purpose of Rule B of the Supplemental Rules of Certain Admiralty and Maritime Claims, but Plaintiff is informed that Defendant has, or will shortly have, assets within this District comprising, *inter alia*, cash, funds, credits, wire transfers, electronic funds transfers, accounts, letters of credit, freights, sub-freights, charter hire and/or sub-charter hire, of, belonging to, due or for the benefit of the Defendant (hereinafter "Assets"), moving through banking institutions including but not limited to Bank of America NA; The Bank of New York; Citibank; Credit Suisse; Deutsche Bank Trust Company Americas; HSBC Bank USA NA; JP Morgan Chase Bank; UBS AG; Union Bank of California International; U.S. Bank National Association; Wachovia Bank, NA; and Wells Fargo Bank, NA or others.

WHEREFORE, Plaintiff SK Shipping Co. Ltd. prays:

a.  That process in due form of law according to the usual practice of this Court may issue against Defendant Eastrade Commodities Inc., citing it to appear and answer the foregoing, and failing such appearance and answer, to have judgment by default against the Defendant in the principal amount of the claims plus interest, costs and attorneys' fees;

b.  That since defendant cannot be found within this District pursuant to Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims, this Court issue an Order directing the Clerk of Court to issue Process of Maritime Attachment and Garnishment pursuant to Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims and also pursuant to the United States Arbitration Act, 9 U.S.C. §§ 1 and 8, attaching and restraining all assets of Defendant in an amount up to and including the sum of $1,244,341.45 but not less than $100,000.00 (with payments or transfers in an amount less than $100,000.00 being exempt from the order) including but not limited to any

cash, funds, credits, wire transfers, electronic funds transfers, accounts, letters of credit, freights, sub-freights, charter hire, sub-charter hire, and/or other assets of, belonging to, due or for the benefit of Defendant including, but not limited to such assets as may be held, received or transferred in its own name or as may be held, received or transferred for its benefit at, moving through, or within the possession, custody or control of banking institutions including but not limited to Bank of America NA; The Bank of New York; Citibank; Credit Suisse; Deutsche Bank Trust Company Americas; HSBC Bank USA NA; JP Morgan Chase Bank; UBS AG; Union Bank of California International; U.S. Bank National Association; Wachovia Bank, NA; and Wells Fargo Bank, NA or others and/or any other garnishee(s) upon whom a copy of the Process of Maritime Attachment and Garnishment issued in this action may be served;

c. That an Order be entered directing Defendant to continue with London arbitration for the adjudication of the merits of the claims with respect to the GOLDEN LION and to proceed to London arbitration for the adjudication of the merits of the claim with respect to the ARHIMIDIS SB;

d. That this Court retain jurisdiction over the matter for any further or supplemental proceedings as may be necessary in order to give effect to the aforesaid London arbitrations; and

e. For such other and further or different relief as this Court may deem just and proper in the premises.

Dated: New York, NY
November 7, 2006

BURKE & PARSONS
Attorneys for Plaintiff
SK SHIPPING CO. LTD.

By [signature]

Keith W. Heard (KH-8578)
100 Park Avenue
New York NY 10017-5533
(212)354-3800

# VERIFICATION

STATE OF NEW YORK )

COUNTY OF NEW YORK )

Keith W. Heard, being duly sworn, deposes and says:

1. I am a member of the bar of this Honorable Court and of the firm of Burke & Parsons, attorneys for the Plaintiff.

2. I have read the foregoing Complaint and I believe the contents thereof are true.

3. This Verification has been made by deponent and not by Plaintiff because Plaintiff is a foreign corporation, and has no officers or directors within this jurisdiction.

4. The sources of my information and belief are documents provided to me and statements made to me by representatives of the Plaintiff.

[signature]
Keith W. Heard

Sworn to before me this
7TH day of November, 2006

[signature]
Notary Public

**Penny S. Martinez**
**Notary Public State of New York**
**No. 01MA4865021 Qualified in Suffolk County**
**Certificate Filed in New York County**
**Commission Expires 29 September 2010**

8966_0001.doc

ORIGINAL

RECOMMENDED
THE BALTIC AND INTERNATIONAL MARITIME CONFERENCE
UNIFORM GENERAL CHARTER (AS REVISED 1922 AND 1976)
INCLUDING "F.I.O." ALTERNATIVE, ETC.
(To be used for trades for which no approval form is in force)
CODE NAME: "GENCON"

Part I

| | |
|---|---|
| 1. Shipbroker<br>Frontline Maritime Ltd. Athens, Greece<br>Moa Shipping Co., Ltd. Seoul, Korea | 2. Place and date<br>Seoul, 6th February, 2003 |
| 3. Owners / Place of business (Cl. 1)<br>SK Shipping Co., Ltd. Seoul, Korea | 4. Charterers / Place of business (Cl. 1)<br>Eastrade Commodities Inc., Panama<br>Agents: Transclear SA, Nyon, Switzerland |
| 5. Vessel's name (Cl. 1)<br>SK SHIPPING TBN | 6. GRT/NRT (Cl. 1) |
| 7. Deadweight cargo carrying capacity in tons (abt.) (Cl. 1) | 8. Present position (Cl. 1)<br>Trading |
| 9. Expected ready to load (abt.) (Cl. 1) | |
| 10. Loading port or place (Cl. 1)<br>- See Clause 47 - | 11. Discharging port or place (Cl. 1)<br>- See Clause 47 - |
| 12. Cargo (also state quantity and margin in Owners' option, if agreed; if full and complete cargo not agreed state "part cargo") (Cl. 1)<br>500,000 metric tons 10% more or less Bulk Cement. Total 12 shipments, full & complete<br>(See also clause 45) | |
| 13. Freight rate (also state if payable on delivered or intaken quantity) (Cl. 1)<br>- See Clause 21 - | 14. Freight payment (state currency and method of payment; also beneficiary and bank account) (Cl. 4)<br>- See Clause 21 - |
| 15. Loading and discharging costs (state alternative (a) or (b) of Cl. 5; also indicate if vessel is gearless)<br>- See Clause 24 - | 16. Laytime (if separate laytime for load. and disch. is agreed, fill in a) and b). If total laytime for load. and disch., fill in c) only (Cl. 6)<br>a) Laytime for loading<br>- See Clause 24 -<br>b) Laytime for discharging<br>- See Clause 24 -<br>c) Total laytime for loading and discharging |
| 17. Shippers (state name and address) (Cl. 6) | |
| 18. Demurrage rate (loading and discharging) (Cl. 7)<br>- See Clause 25 - | 19. Cancelling date (Cl. 10)<br>- See Clause 45 - |
| 20. Brokerage commission and to whom payable (Cl. 14)<br>1.25 percent to Frontline Maritime Ltd. and 1.25 percent to Moa Shipping Co., Ltd. | |
| 21. Additional clauses covering special provisions, if agreed.<br>Additional Clauses 18 to 47 both included, to be incorporated in this Charter Party and form fully part of this Charter Party | |

It is mutually agreed that this Contract shall be performed subject to the conditions contained in this Charter which shall include Part I as well as Part II. In the event of a conflict of conditions, the provisions of Part I shall prevail over those of Part II to the extent of such conflict.

| Signature (Owners) | Signature (Charterers) |
|---|---|
| | |

Printed and sold by Fr. G. Knudtzon Ltd., 55 Toldbodgade, DK-1253 Copenhagen K. Telefax +45 33 93 11 84
By authority of the Baltic and International Maritime Conference (BIMCO), Copenhagen.

Adopted by the Documentary Committee of the General Council of British Shipping, London and the Documentary Committee of The Japan Shipping Exchange, Inc. Tokyo

Copyright published by The Baltic and International Maritime Conference (BIMCO), Copenhagen

EXHIBIT 1

**PART II**

**"Gencon" Charter (As Revised 1922 and 1976)**

Including "F.I.O." Alternative, etc.

1. It is agreed between the party mentioned in Box 3 as Owners of the ~~steamer or~~ motor-vessel named in Box 5, of the gross/net Register tons indicated in Box 6 and carrying about the number of tons of deadweight cargo stated in Box 7, now in position as stated in Box 8 and expected ready to load under this Charter about the date indicated in Box 9, and the party mentioned as Charterers in Box 4 that:

   The said vessel shall proceed to the loading port or place stated in Box 10 or so near thereto as she may safely get and lie always afloat, and there load a full and complete cargo ~~(if shipment of deck cargo agreed same to be at Charterers' risk) as stated in Box 12 (Charterers to provide all mats and/or wood for dunnage and any separations required~~, the Owners allowing the use of any dunnage wood on board if required) which the Charterers bind themselves to ship, and being so loaded the vessel shall proceed ***with utmost despatch*** to the discharg-

   ing port or place stated in Box 11 ~~as ordered on signing Bill of Lading~~ or so near thereto as she may safely get and lie always afloat and there deliver the cargo on being paid freight on delivered or intaken quantity as indicated in Box 13 at the rate stated in Box 13.

2. **Owners' Responsibility Clause**

   Owners are to be responsible for loss of or damage to the goods or for delay in delivery of the goods only in case the loss, damage or delay has been caused by the improper or negligent stowage of the goods ~~(unless stowage performed by shippers/Charterers or their stevedores or servants)~~ or by personal want of due diligence on the part of the Owners or their Manager to make the vessel in all respects seaworthy and to secure that she is properly manned, equipped and supplied or by the personal act or default of the Owners or their Manager.

   ~~And the Owners are responsible for no loss or damage or delay arising from any other cause whatsoever, even from the neglect or default of the Captain or crew or some other person employed by the Owners on board or ashore for whose acts they would, but for this clause, be responsible, or from unseaworthiness of the vessel on loading or commencement of the voyage or at any time whatsoever. Damage caused by contact with or leakage, smell or evaporation from other goods or by the inflammable or explosive nature or insufficient package of other goods not to be considered as caused by improper or negligent stowage, even if in fact so caused.~~

3. **Deviation Clause**

   The vessel has liberty to call at any port or ports in any order, for ~~any purpose~~ ***emergency situation only,*** to sail without pilots, to tow and/or assist vessels in

   all situations, and also to deviate for the purpose of saving life and/or property.

4. **Payment of Freight** ***(See Clause 21)***

   ~~The freight to be paid in the manner prescribed in Box 14 in cash without discount on delivery of the cargo at mean rate of exchange ruling on day or days of payment, the receivers of the cargo being bound to pay freight on account during delivery, if required by Captain or Owners.~~

   ~~Cash for vessel's ordinary disbursements at port of loading to be advanced by Charterers if required at highest current rate of ex-~~

2

**PART II**
**"Gencon" Charter (As Revised 1922 and 1976)**
Including "F.I.O." Alternative, etc.

~~change, subject to two per cent, to cover insurance and other expenses.~~

**5. Loading/Discharging Costs** ***(See Clause 24)***

* *(a) Gross Terms*
~~The cargo to be brought alongside in such a manner as to enable vessel to take the goods with her own tackle. Charterers to procure and pay the necessary men on shore or on board the lighters to do the work there, vessel only heaving the cargo on board.~~
~~If the loading takes place by elevator, cargo to be put free in vessel's holds, Owners only paying trimming expenses.~~
~~Any pieces and/or packages of cargo over two tons weight, shall be loaded, stowed and discharged by Charterers at their risk and expense.~~
~~The cargo to be received by Merchants at their risk and expense alongside the vessel not beyond the reach of her tackle.~~

* *(b) F.i.o. and free stowed/trimmed*
The cargo shall be brought into the holds, loaded, stowed and/or trimmed and taken from the holds and discharged by the Charterers or their Agents, free of any risk, liability and expense whatsoever to the Owners.
~~The Owners shall provide winches, motive power and winchmen from the Crew if requested and permitted; if not, the Charterers shall provide and pay for winchmen from shore and/or cranes, if any. (This provision shall not apply if vessel is gearless and stated as such in Box 15).~~

* *indicate alternative (a) or (b), as agreed, in Box 15.*

**6. Laytime** ***(See Clause 24)***

* *(a) Separate laytime for loading and discharging*
~~The cargo shall be loaded within the number of running hours as indicated in Box 16, weather permitting, Sundays and holidays excepted, unless used, in which event time actually used shall count.~~
~~The cargo shall be discharged within the number of running hours as indicated in Box 16, weather permitting, Sundays and holidays excepted, unless used, in which event time actually used shall count.~~

* *(b) Total laytime for loading and discharging*
~~The cargo shall be loaded and discharged within the number of total running hours as indicated in box 16, weather permitting, Sundays and holidays excepted, unless used, in which event time actually used shall count.~~

*(c) Commencement of laytime (loading and discharging)*
Laytime for loading and discharging shall commence at 1 p.m. if notice of readiness is given before noon, and at 6 a.m. next working day if notice given during office hours after noon. Notice at loading port to be given to the Shippers named in Box 17 ***or WIBON, WIPON, WIFPON, WICCON***
~~Time actually used before commencement of laytime shall count.~~
Time lost in waiting for berth to count as loading or discharging time, as the case may be.

* *Indicate alternative (a) or (b) as agreed, in Box 16.*

**7. Demurrage** ***(See Clause 25)***
~~Ten running days on demurrage at the rate stated in Box 18 per day or pro rata for any part of a day, payable day by day, to be allowed Merchants altogether at ports of loading and discharging.~~

**8. Lien Clause**
Owners shall have a lien on the cargo for freight, dead-freight, demurrage ~~and damages for detention~~. Charterers shall remain re-

**PART II**
**"Gencon" Charter (As Revised 1922 and 1976)**
Including "F.I.O." Alternative, etc.

sponsible for dead-freight and demurrage ~~(including damages for detention)~~, incurred at port of loading. Charterers shall also remain responsible for freight and demurrage ~~(including damages for detention)~~ incurred at port of discharge, but only to such extent as the Owners have been unable to obtain payment thereof by exercising the lien on the cargo.

9. **Bill of Lading**
The Captain to sign Bill of Lading ***in accordance with Mate's and tally clerks receipt's.*** ~~at such rate of freight as presented without prejudice to this Charterparty, but should the freight by Bills of Lading amount to less than the total chartered freight the difference to be paid to the Captain in cash on signing Bills of Lading.~~

10. **Cancelling Clause**
~~Should the vessel not be ready to load (whether in berth or not) on or before the date indicated in Box 10, Charterers have the option of cancelling this contract, such option to be declared, if demanded, at least 48 hours before vessel's expected arrival at port of loading. Should the vessel be delayed on account of average or otherwise, Charterers to be informed as soon as possible, and if the vessel is delayed for more than 10 days after the day she is stated to be expected ready to load, Charterers have the option of cancelling this contract, unless a cancelling date has been agreed upon.~~

11. **General Average**
General average to be settled ***and adjusted in London*** according to York-Antwerp Rules,
~~1974~~ ***as amended in 1990,*** Proprietors of cargo to pay the cargo's share in the general
expenses even if same have been necessitated through neglect or default of the Owners' servants (see clause 2).

12. **Indemnity**
Indemnity for non-performance of this Charterparty, proved damages, not exceeding estimated amount of freight.

13. **Agency**
In every case the ~~Owners~~ ***Charterers*** shall appoint his own ~~Broker or~~ Agent both
at the port of loading and the port of discharge.

14. **Brokerage**
A brokerage commission at the rate stated in Box 20 on the freight, ***deadfreight and demurrage***
earned is due to the party mentioned in Box 20.
~~In case of non-execution at least ⅓ of the brokerage on the estimated amount of freight and dead-freight to be paid by the Owners to the Brokers as indemnity for the latter's expenses and work. In case of more voyages the amount of indemnity to be mutually agreed.~~

15. **GENERAL STRIKE CLAUSE**
Neither Charterers nor Owners shall be responsible for the consequences of any strikes or lock-outs preventing or delaying the fulfillment of any obligations under this contract.
If there is a strike or lock-out affecting the loading of the cargo, or any part of it, when vessel is ready to proceed from her last port or at any time during the voyage to the port or ports of loading or

PART II
"Gencon" Charter (As Revised 1922 and 1976)
Including "F.I.O." Alternative, etc.

after her arrival there, Captain or Owners may ask Charterers to declare, that they agree to reckon the laydays as if there were no strike or lock-out. Unless Charterers have given such declaration in writing (by telegram, if necessary) within 24 hours, Owners shall have the option of canceling this contract. If part cargo has already been loaded, Owners must proceed with same, (freight payable on loaded quantity only) having liberty to complete with other cargo on the way for their own account.

If there is a strike or lock-out affecting the discharge of the cargo on or after vessel's arrival at or off port of discharge and same has not been settled within 48 hours, Receivers shall have the option of keeping vessel waiting until such strike or lock-out is at an end against paying half demurrage after expiration of the time provided for discharging, or of ordering the vessel to a safe port where she can safely discharge without risk of being detained by strike or lock-out. Such orders to be given within 48 hours after Captain or Owners have given notice to Charterers of the strike or lock-out affecting the discharge. On delivery of the cargo at such port, all conditions of this Charter party and of the Bill of Lading shall apply and vessel shall receive the same freight as if she had discharged at the original port of destination, except that if the distance of the substituted port exceeds 100 nautical miles, the freight on the cargo delivered at the substituted port to be increased in proportion.

16. **War Risks ("Voywar 1950")**

(1) In these clause "War Risks" shall include any blockade or any action which is announced as a blockade by any Government or by any belligerent or by any organized body, sabotage, piracy, and any actual or threatened war, hostilities, warlike operations, civil war, civil commotion, or revolution.

(2) If at any time before the Vessel commences loading, it appears that performance of the contract will subject the Vessel or her Master and crew or her cargo to war risks at any stage of the adventure, the Owners shall be entitled by letter or telegram dispatched to the Charterers, to cancel this Charter.

(3) The Master shall not be required to load cargo or to continue loading or to proceed on or to sign Bill(s) of Lading for any adventure on which or any port at which it appears that the Vessel, her Master and crew or her cargo will be subjected to war risks. In the event of the exercise by the Master of his right under this Clause after part or full cargo has been loaded, the Master shall be at liberty either to discharge such cargo at the loading port or to proceed therewith. In the latter case the Vessel shall have liberty to carry other cargo for Owner's benefit and accordingly to proceed to and load or discharge such other cargo at any other port or ports whatsoever, backwards or forwards, although in a contrary direction to or out of or beyond the ordinary route. In the event of the Master electing to proceed with part cargo under this Clause freight shall in any case be payable on the quantity delivered.

(4) If at the time the Master elects to proceed with part of full cargo under Clause 3, or after the Vessel has left the loading port, or the last of the loading ports, if more than one, it appears that further performance of the contract will subject the Vessel, her Master and crew or her cargo, to war risks, the cargo shall be discharged, or if the discharge has been commenced shall be completed, at any safe port in vicinity of the port of discharge as may be ordered by the Charterers. If no such orders shall be received from the Charterers within 48 hours after the Owners have despatched a request by telegram to the Charterers for the nomination of a substitute discharg-

ing port, the Owners shall be at liberty to discharge the cargo at any safe port which they may, in their discretion, decide on and such discharge shall be deemed to be due fulfilment of the contract of affreightment. In the event of cargo being discharged at any such other port, the Owners shall be entitled to freight as if the discharge had been effected at the port or ports named in the Bill(s) of Lading or to which the Vessel may have been ordered pursuant thereto.

(5) (a) The Vessel shall have liberty to comply with any directions or recommendations as to loading, departure, arrival, routes, ports of call, stoppages, destination, zones, waters, discharge, delivery or in any other wise whatsoever (including any direction or recommendation not to go to the port of destination or to delay proceeding thereto or to proceed to some other port) given by any Government or by any belligerent or by any organized body engaged in civil war, hostilities or warlike operations or by any person or body acting or purporting to act as or with the authority of any Government or belligerent or of any such organized body or by any committee person having under the terms of the war risks insurance on the Vessel, the right to give any such directions or recommendations, if by reason of or in compliance with any such direction or recommendation, anything is done or is not done, such shall not be deemed a deviation.

(b) If, by reason of or in compliance with any such directions or recommendations, the Vessel does not proceed to the port or ports named in the Bill(s) of Lading or to which she may have been ordered pursuant thereto, the Vessel may proceed to any port as directed or recommended or to any safe port which the Owners in their discretion may decide on and there discharge the cargo. Such discharge shall be deemed to be due fulfilment of the contract of affreightment and the Owners shall be entitled to freight as if discharge had been effected at the port or ports named in the Bill(s) of Lading or to which the Vessel may have been ordered pursuant thereto.

(6) All extra expenses(including insurance costs) involved in discharging cargo at the loading port or in reaching or discharging the cargo at any port as provided in Clause 4 and 5 (b) hereof shall be paid by the Charterers and/or cargo owners, and the Owners shall have a lien on the cargo for all moneys due under these Clauses.

**17. GENERAL ICE CLAUSE**

*Port of Loading*

(a) In the event of the loading port being inaccessible by reason of ice when vessel is ready to proceed from her last port or at any time during the voyage or on vessel's arrival or in case frost sets in after vessel's arrival, the Captain for fear of being frozen in is at liberty to leave without cargo, and this Charter shall be null and void.

(b) If during loading the Captain, for fear of vessel being frozen in, deems it advisable to leave, he has liberty to do so with what cargo he has on board and to proceed to any other port or ports with Option of completing cargo for Owners' benefit for any port or ports including port of discharge. Any part cargo thus loaded under this Charter to be forwarded to destination at vessel's expense but against payment of freight, provided that no extra expenses be thereby caused to the Receivers, freight being paid on quantity delivered (in proportion if lumpsum), all other conditions as per Charter.

(c) In case of more than one loading port, and if one or more of the ports are closed by ice, Captain or Owners to be at liberty

## PART II
### "Gencon" Charter (As Revised 1922 and 1976)
Including "F.I.O." Alternative, etc.

either to load the part cargo at the open port and fill up elsewhere for their own account as under section (b) or to declare the Charter null and void unless Charterers agree to load full cargo at the open port.

(d) This Ice Clause not to apply in the Spring.

*Port of discharge*

(a) Should ice (except in the Spring) prevent vessel from reaching port of discharge Receivers shall have the option of keeping vessel waiting until the re-opening of navigation and paying demurrage, or of ordering the vessel to a safe and immediately accessible port where she can safely discharge without risk of detention by ice. Such orders to be given within 48 hours after Captain or Owners have given notice to Charterers of the impossibility of reaching port of destination.

(b) If during discharging the Captain for fear of vessel being frozen in deems it advisable to leave, he has liberty to do so with what cargo he has on board and to proceed to the nearest accessible port where she can safely discharge.

(c) On delivery of the cargo at such port, all conditions of the Bill of Lading shall apply and vessel shall receive the same freight as if she had discharged at the original port of destination, except that if the distance of the substituted port exceed 100 nautical miles, the freight one the cargo delivered at the substituted port to be increased in proportion.

ADDITIONAL CLAUSES TO MV "SK SHIPPING TBN" / EASTRADE
CHARTER PARTY DATED 6TH FEBRUARY, 2003

**CLAUSE 18**
Vessel to be presented for loading with holds clean/swept/dry and free from residues of previous cargoes, suitable in all respects to receive the intended cargo to the satisfaction of Charterers/Shippers inspectors.
Hatchcovers to be in satisfactory condition to ensure water tightness.
Charterers may order hose test if required at their time and expenses.

**CLAUSE 19**
Unless a vessel has loaded in Padang/Ube or Kanda/Sriracha or Kosichang/Hualien before and has cargo inlets suitable for shippers' loading equipment, The Owners to permit the cutting of suitable cargo inlets at Shippers/Charterers expenses/time.
The Owners option to have their class surveyor to follow cutting/opening and closing of such holes but cost for class surveyor to be for Owners account.

**CLAUSE 20**
Vessel/Owners to be responsible for any damage to the cargo by cause of water ingress through ventilators or leakage due to improper hatch cover sealing or leakage of water or oil from pipes and/or tanks or due to improper/careless cutting and rewelding of cargo inlets.

**CLAUSE 21**
Freight US$16.30 per metric-ton free in and out trimming basis 1/1 basis Padang, Indonesia.

Freight US$16.30 per metric-ton free in and out trimming basis 1/1 basis Kosichang or Sri-Racha, Thailand

Freight US$15.55 per metric-ton free in and out trimming basis 1/1 basis Ube or Kanda, Japan. The above (US$15.55) freight rate for Kanda shipments only applies provided that Shippers accept the vessel(s) proposed by Owners as per Shippers parameters i.e. Maximum LOA 190 meters and the distance between the BOW-side-edge of the #1 hatch-coaming and the AFT-side-edge of the last hatch-coaming 131 meters or as near to it.
If shippers decline the proposed vessel(s) by Owners for Kanda shipments because of the distance between the BOW-side-edge of the #1 hatch-coaming and the AFT-side-edge of the last hatch-coaming, following substitute clause to be applied on both parties :
"The Charterers shall do their best to get shippers acceptance of the vessel for owners proposed vessel(s). In spite of owners best effort, if owners fail to find other suitable grabber interested in, then owners notify this fact of the Charterers immediately. Owners and Charterers shall best cooperate to find other alternate solution such as non-grabber and renting grabs at discharging port as a substitute. In this case, the negotiation for a new freight rate shall be started and agreed amicably on both parties based on prevailing market. If a new freight rate fails to be agreed on both parties eventually, Charterers have option to negotiate and fix concerning shipment with others but the rest of Kanda shipments shall be remaining valid as a part of this C.O.A. Contract."

Freight US$15.25 per metric-ton free in and out trimming basis 1/1 basis Hualien, Taiwan.

Freight rates are based on "Free Disbursements at Port Harcourt for Owners.

For each shipment, freight payment 95% less 3.75% commission (2.5% address to Charterers plus 1.25% to Frontline) within 3 banking days from signing 'Clean on board' and 'Freight Prepaid' Bills of Lading.

**ADDITIONAL CLAUSES TO MV "SK SHIPPING TBN" / EASTRADE CHARTER PARTY DATED 6TH FEBRUARY, 2003**

Bills of Ladings to be released by Owners to Charterers' representative at loading port upon Charterers faxing to Owners copy of banker swift providing that 95 per cent less permitted deductions have been irrevocably remitted. Clean Bills of Lading will be issued provided no remarkes on Mate's Receipts on the condition of the cargo.

5 % balance freight less despatch plus demurrage, if any, to be settled after right and true delivery of the cargo at destination within 30 days upon submitting usual copies of Statement of fact/Notice of Readiness at loading and discharging port duly signed by Master/Agents/Shippers/Receivers.

Freight is deemed earned as cargo is loaded on board, discountless and non-returnable, vessel and/or cargo lost or not lost.

Freight to be paid to:

JPMORGAN CHASE BANK, NEW YORK
For credit of Korea Exchange Bank
(Swift Code : KOEXKRSE)
in favor of SK Shipping Co., Ltd. Seoul Korea
(A/C, 030-JCD-100121) with Korea Exchange
Bank, Namdaemun Branch, Seoul Korea

**CLAUSE 22**
Vessel to provide sufficient light day and night on Saturdays, Sundays, holidays, if required, free of expense to Shippers/Charterers/Receivers.

**CLAUSE 23**
Quantitty loaded to be determined by a daraft survey report established by Shippers and SGS or their representatives and Master at Charterers' expense and countersigned by, if he agrees Master showing same weight as Bills of Lading. Any dispute to be settled prior to departure from the load port.

**CLAUSE 24**
Cargo to be loaded at an average rate of 5,000 metric-tons for Padang, Indonesia and 6,000 metric-tons for Kosichang or Sri-Racha, Thailand and 10,000 metric-tons for Ube or Kanda, Japan per weather working day of 24 consecutive hours Sundays and holidays included, except super holidays, unless used and 8,000 metric-tons for Hualien, Taiwan per weather working day of 24 consecutive hours Saturday noon, Sundays and Holidays excluded, unless used.

Cargo to be discharged by Charterers/Receivers at an average rate of 3,200 metric-tons per weather working day of 24 consecutive hours Saturdays, Sundays and holidays included, except super holidays, unless used.

Notice of Readiness whether in port or not, whether in berth or not, whether in free pratique or not, whether in customs clearance or not to be tendered by radio/telex/cable/VHF to Shippers/Receivers and/or their agents provided vessel has arrived within port jurisdiction/waters/customary waiting anchorage, and time to count as per GENCON Charter-party. Notice of Readiness at loadport to be tendered any time, day/night, Sundays/holidays included but time commencing to count as per GENCON Charter-party. Notice of Readiness at discharge port to be tendered any time, day/night, Sundays/holidays included.

**ADDITIONAL CLAUSES TO MV "SK SHIPPING TBN" / EASTRADE CHARTER PARTY DATED 6TH FEBRUARY, 2003**

Time used for shifting from anchorage to loading/discharging berth not to count as laytime unless vessel is already on demurrage.
Time from customary waiting place to discharging berth not to count.

Shifting between berths if any to be for owners account and time to count.

If vessel fails to obtain free pratique, time not to count from the moment vessel failed obtaining Free Pratique until Free Pratique is actually granted.

If vessel fails to pass cargo holds survey, time will not count from the moment vessel is rejected until she actually passes the holds survey.

Laytime to be non-reversible.

**CLAUSE 25**
Demurrage is to be paid at the rate of US$10,000 for loading port and US$9,500 for discharging port respectively per day or pro rata for any part of a day. Demurrage at both ends is payable by Charterers after presentation of Statement of Facts, duly signed by Master/Shippers/Receivers or their representatives and agents, together with Notice of Readiness and Owners' Time Sheets.

**CLAUSE 26**
Despatch at half demurrage rate for working time saved at loading and discharging port is payable by Owners to Charterers.

**CLAUSE 27**
Agents to be Charterers agents at both ends.

-Agents at loading port of Padang :

BEN LINE AGENCIES INDONESIA
JAKARTA, INDONESIA
TEL (62) 21 527 3290
FAX 527 3291
E-MAIL benjkt@cbn.net.id
DIRECT LINE : (62) 21 527 3366
MOBILE : (62) 816 1909 130
PIC : CAPT MOCHTAR, TRAMP AGENCY MANAGER

-Agents at loading port of Thailand :

M/S BEN LINE AGENCIES (THAILAND) LTD
14TH/15TH FLOOR, SETHIWAN TOWER,
139 PAN ROAD, SILOM, BANGRAK
BANGKOK 10500 / THAILAND
TEL: 66-2- 233 7733-9
FAX: 66-2- 237 0895
EMAIL : mngt@benline.co.th
PIC : CAP PIYASIT SRIPRAPHAN - OPERATIONS MANGR

-Agents at loading port of Taiwan :

CONVEYOR SHIPPING AGENCIES INC

**ADDITIONAL CLAUSES TO MV "SK SHIPPING TBN" / EASTRADE CHARTER PARTY DATED 6TH FEBRUARY, 2003**

ROOM 6-3, 6TH FLOOR
267 SECTION 2,
TUN HUA SOUTH ROAD,TAIPEI/TAIWAN
TEL.: (886) 2 2739 8386
FAX : (886) 2 2739 8359
EMAIL: conveyor@ms17.hinet.net
PICS : MR WALT HSU & MR CHARLES CHIU

-Agents at loading port of Japan : to be advised later

-Agents at discharging port :

HAASTRUP LINE (WA) LIMITED
HAASTRUP JETTY
RUMUOLUMENI
P.M.B. 5429
PORT HARCOURT
NIGERIA

TEL: 234-84-235165, 332505, 332791
FAX: 234-84-239334 (PHONE/FAX, WORKD MANUALLY ONLY)
CABLE: HASINDS PH, PORT HARCOURT
PIC: MR SAM E. ETIM / MR FEMI A. TAYLOR
MOB: 234-80-37097354
EMAIL : ftaylor55@yahoo.com

**CLAUSE 28**
Owners/Master to give 7/5/3/2/1 day(s) notice or ETA at each loading port to:

1) TRANSCLEAR NYON/SWITZERLAND (CABLE)
OR EMAIL : info@transclear.ch
OR FAX : 4122-990 0191

2) CHARTERERS NOMINATED AGENTS : Details as above

3) THE PARTIES CONCERNED AT EACH PORT :

-In case loading at Padang:
PT SEMEN PADANG
INDARUNG
PADANG 25237 WESTSUMATERA, INDONESIA

-In case loading at Taiwan:
TAIWAN CEMENT CORPORATION
113 CHUNG SAN N. ROAD, SEC.2
104 TAIPEI, TAIWAN

AND EMAIL TO: kongklac@cementhai.co.th and somjais@cementhai.co.th

-In case loading at Thailand: to be advised later

-In case loading at Japan: to be advised later

Upon sailing from loading port Master to cable quantity loaded, distribution holdwise, Bills of Lading date, sailing time load port and ETA discharge port and further 7/5/3/2/1 day(s) ETA discharge port notice to be given by Owners/Master to :

1) TRANSCLEAR NYON/SWITZERLAND (CABLE)
OR EMAIL : info@transclear.ch
OR FAX : 4122-990 0191

2) EASTERN BULKCEM

**ADDITIONAL CLAUSES TO MV "SK SHIPPING TBN" / EASTRADE CHARTER PARTY DATED 6TH FEBRUARY, 2003**

RUMUOLUMENI
PORT HARCOURT NIGERIA
FAX : 234-84-237741
EMAIL: milford_sea_marine@yahoo.com
ATTN: MIKE COLLINGS

3) CHARTERERS NOMINATED AGENTS :

HAASTRUP LINE (WA) LIMTIED
HAASTRUP JETTY
RUMUOLUMENI
P.M.B. 5429
PORT HARCOURT
NIGERIA

TEL: 234-84-235165, 332505, 332791
FAX: 234-84-239334 (PHONE/FAX, WORKD MANUALLY ONLY)
CABLE: HASINDS PH, PORT HARCOURT
PIC: MR SAM E. ETIM / MR FEMI A. TAYLOR
MOB: 234-80-37097354
EMAIL : ftaylor55@yahoo.com

**CLAUSE 29**
**Vessel's description:**

A) Performing Vessel : SK Shipping TBN, Maximum 25 years, Minimum 25 metric tons Cranes, Grab Fitted.
Performing vessel to be nominated at latest by 3 days prior to vessel's ETA Loading port.

B) Charterers Questionnaires : Owners to fill up followings on each voyage separately.

OWNERS/DISPONENT OWNERS(IF ANY):
OWNERS PNI :
TYPE OF GRABS :
GRABS'OUTREACH(TO BE MINIMUM 8.5M) :
GRABS'WEIGHT :
DISCHARGING CAPACITY OF GRABS BASIS 16 HRS WRKNG:
VESSEL'S ITINERARY/LAST PORT OF CALL:
WHERE OWNERS INTEND TO BUNKER THE VESSEL (BUNKERING PLACE) :
H+M UNDERWRITTER :
H+M VLAUE :
CLASS :
LAST 3 CARGOES :
DATE OF LAST SS AND DD :
FOR JAPAN SHIPMENTS ONLY, WHEN OWNERS NOMINATE THE PERFORMING VESSEL, OWNERS HAVE TO SUBMIT VESSEL'S G/A PLAN.

OWNERS WARRANT:

- VESSEL SHALL NOT CHANGE OWNERSHIP OR CLASS WITHOUT CHARTERERS' WRITTEN CONSENT
- VESSEL'S H+M INSURANCE SHALL BE FULLY MAINTAINED AND WILL NOT BE CHANGED.
- VESSEL IS FULLY PNI COVERED, WHICH SHALL BE MAINTAINED
- OWNERS/DEMISED CHARTERERS WARRANT THAT VESSEL HAS NO ENCUMBRANCES WHICH MAY CAUSE HER ARREST OR DETENTION AND THAT VESSEL WILL NOT GO FOR SCRAP AFTER THIS VOYAGE.

**CLAUSE 30**
Stevedores damages are to be settled directly between Owners ans stevedores.
All damages to be notified to stevedores in writing 24 hours after occurence of such damage or as soon as discovered but not later than sailing from the port of occurence. Proved damages are to be repaired by the stevedores without intervention of the Charterers/Shippers/Receivers. But

**ADDITIONAL CLAUSES TO MV "SK SHIPPING TBN" / EASTRADE CHARTER PARTY DATED 6TH FEBRUARY, 2003**

---

Charterers to assist Owners in settling stevedores damages accordingly.

**CLAUSE 31**
At loadport any taxes/dues/wharfage if any on freight/vessel to be for Owners' account,
At discharge port any taxes/dues/wharfage on freight/vessel for Charterers' account.

Same on cargo for Charterers account both ends.

Owners free entire disbursement Accounts including agency fees/inward taxes/etc at discharging port but for Charterers' account. Should vessel be delayed/detained due to Charterers to be ultimatively responsible for any and all costs incurred and vessel to be on demurrage.

**CLAUSE 32**
Opening and closing of hatches to be performed by vessel's crew provided shore regulations permit. Otherwise shore labour shall be employed and paid by Charterers/Shippers/Receivers.

**CLAUSE 33**
Owners to contribute on extra insurance premium maximum US$3,000 for vessels between 16-20 years old and maximum US$4,500 for vessels between 21-25 years old.

**CLAUSE 34**
Owners guarantee that their vessel is fully P + I covered by ....... and will remain so during the entire duration of this Charter.

**CLAUSE 35**
Deleted.

**CLAUSE 36**
Overtime to be for account of party ordering same. If ordered by port authorities same to be for Charterers/Shippers/Receivers account. Overtime for ship's officers and crew always to be for Owners' account.

**CLAUSE 37**
New Both-To-Blame Collision Clause, General Average and The New Jason Clause, General Clause Paramount and P + I Bunker Deviation Clause to be incorporated in this Charter-Party and Bills of Lading issued thereunder.

**CLAUSE 38**
All disputes arising under this contract which cannot be amicably resolved shall be referred to Arbitration in London. Unless the parties agree upon a sole Arbitrator, one to be appointed by each of the parties who will have the power to appoint an umpire if they disagree. The Arbitrators and the umpire shall be members of the London Maritime Arbitrators' Association.

**ADDITIONAL CLAUSES TO MV "SK SHIPPING TBN" / EASTRADE CHARTER PARTY DATED 6TH FEBRUARY, 2003**

The contract is governed by English Law and ther shall apply to Arbitrators proceedings under this clause terms of the London Maritime Arbitrators' Association at the time when the Arbitration proceedings are commenced.

LMAA rules to apply.
General Average in London, UK, English law to apply.

**CLAUSE 39**
Owners guarantee that vessel shall be kept during the whole duration of the voyage suitable and in good seaworthy condition and shall have all certificates in order and valid.

**CLAUSE 40**
Any of the following clauses are excepted, regardless of where they occur. Strikes or lockouts at the Shippers' or suppliers' mines or factory, on railways, trucks or barges, or at the ports of loading or discharging, war or effects of war, revolution, civil commotion, breakdown on or stoppage or shortage of railways, trucks or barges, interruptions, stoppage or breakdowns at the factory of the Shippers' or suppliers' now or hereafter under contract, stoppage or destruction of goods in transit, epidemic, frost, fire, cyclones, storms, floods, earthquakes, unavaidable accidents to machinery or equipment, or other unavoidable hindrances or delays in mining, manufacturing, transporting, loading, discharging or receiving the material or goods, restraints of established authorities, and delay caused by the vessel, Master or crew, and any other causes whatsoever or howsoever arising happening without the fault and/or responsiblity of the Charterers preventing or delaying the mining of manufacturing, supplying, transporting, loading, discharing or receiving of the cargo. Charterers shall not be liable for any loss or damage resulting from any such excepted causes and time lost by reason thereof shall not count as used time or time on demurrage.

**CLAUSE 41**
Owners and/or demised Charterers warrant that vessel has no encumbrances which may cause her arrest or detention.

**CLAUSE 42**
Owners' P + I Club to confirm to Charterers in writing that payment of premiums is up to date.

**CLAUSE 43**
Deleted.

**CLAUSE 44**
Any negotiations and/or eventual fixture(s) to remain strictly private and confidential between the Owners/Charterers and their brokers who are involved.

**CLAUSE 45**
First shipment : to arrive Port Harcourt on/about 1-3 April (estimated voyage 26 days).
Laycan for 1st shipment 21-26 February 2003 basis all other shipments fairly even spread during 2003.
The last shipment E.T.A. Port Harcourt to be end of November, 2003

**ADDITIONAL CLAUSES TO MV "SK SHIPPING TBN" / EASTRADE CHARTER PARTY DATED 6TH FEBRUARY, 2003**

Charterers to declare layday/cancelling date for each shipment at latest by 30 days prior to commencement of layday for each shipment.
Laycan for each shipment to be 10 days spread and to be narrowed at latest by 5 days prior to E.T.A. load port to 5 days spread.

**CLAUSE 46**
If grab fitted ships with either hydraulically operated grabs or remote controlled grabs, Grabs outreach to be minimum 8.5 meters

**CLAUSE 47**
Loading ports :

A) 1-2 safe berth(s) Padang, Indonesia, draft 10.5 meters salt water upto 10.8 meters at high tide in master's option/Owners full responsibility,
LOA maximum 200 meters and maximum clear height 12 meters, or in charterers option

B) 1-2 safe berth(s)/anchorage(s) Kosichang or Sri-Racha port (Thailand) where Charterers guarantee draft not less than 11 meters salt water. Or in Charterers option

C) 1-2 safe berth(s) Ube, Japan, maximum draft 11 meters salt water, maximum LOA 190 meters/Beam 32 meters, maximum clear height 13 meters.
At Ube, cement holes will be required. Or

Kanda, Japan maximum draft 11 meters salt water maximum LOA 190 meters/Beam 32 meters, maximum clear hight 12.5 meters. The distance between the bow-side-edge of the #1 hatch-coaming and the aft-side-edge of the last hatch-coaming should be less than 131 meters.
At Kanda no cement holes required.

D) or in Charterers option 1 safe berth Hualien, Taiwan, Berth No. 18, Draft 11 meters salt water, Maximum LOA 200 meters, No beam restrictions, No restriction on allowable height from water level to top of vessel's hatchcoaming.
Cargo inlets (cement holes) are required.

Discharging port :

1 safe anchorage Port Harcourt, Nigeria always afloat where Charterers undertake that no restrictions apply except 11 meters salt water draft.
Discharging to be done by Vessel's own gear and grabs. However no craneman available from the vessel, Charterers to employ competent shorehands at their risk and expense.

(END)

M/V GOLDEN LION
B/L 02.11.03

LOADED : 36'850 MT BULK CEMENT
DISCHARGED : 35'432 MT SOUND CEMENT
1'418 MT DAMAGED/SOTNED CEMENT

**FINAL FREIGHT ACCOUNT**

| | U.S.$ |
|---|---|
| BALANCE FREIGHT 5% | 28'098.13 |
| DESPT LDPORT | (11'920.14) |
| DEMURRAGE DISCHARGE | 50'651.99 |
| PAYMENT TO HAASTRUP | ( 457.00) |
| BANKING FEE | ( 100.00) |
| | 66'272.98 |

Damaged cargo / receivers Claim (222'745.00)

EASTRADE COMMODITIES INC.

EXHIBIT 2

| VESSEL | DUE TO OWNERS | DUE TO CHARTS/ RCVERS |
|---|---|---|
| **GOLDEN LION** | | |
| Load        despatch | | 11,920.14 |
| Discharge demurrage | 50,651.99 | |
| Balance freight | 28,098.13 | |
| Damaged Cargo claim | | 222,745.00 |
| | | |
| **GREAT CLAM** | | |
| Load        demurrage | 26,615.80 | |
| Discharge  demurrage | 54,265.62 | |
| Balance freight | 31,033.75 | |
| | | |
| **K SILVER** | | |
| LD       demurrage | 8,987.34 | |
| DIS      dto | 82,890.63 | |
| Cutting holes load | 6,400.00 | |
| Balance freight | 31,476.00 | |
| Stevedore damage | 11,120.20 | |
| | | |
| **MUTSUSHIO** | | |
| Load        despatch | | 44,741.68 |
| Discharge despatch | | 33,152.78 |
| Balance feight | 91,641.25 | |
| | | |
| | **423,180.71** | **312,559.60** |
| Balance | 110,621.11 | |
| Less payments to Haastrup | | 9,827.00 |
| Banking fee | | 250.00 |
| | | |
| Final Balance to SK | 100,544.11 | |

E:\users\Nichol\TABLES\COA-Golden Lion.Great Clam.K.Silver.Mutsushio.doc

RECOMMENDED
THE BALTIC AND INTERNATIONAL MARITIME CONFERENCE
UNIFORM GENERAL CHARTER (AS REVISED 1922 AND 1976)
INCLUDING "F.I.O." ALTERNATIVE, ETC.
(To be used for trades for which no approval form is in force)
CODE NAME : "GENKON"

Part I

| | |
|---|---|
| 1. Shipbroker<br>Frontline Maritime Ltd. Athens, Greece<br>Moa Shipping Co., Ltd. Seoul, Korea | 2. Place and date<br>Seoul, 16th September, 2005 |
| 3. Owners / Place of business (Cl. 1)<br>SK Shipping Co., Ltd. Seoul, Korea | 4. Charterers /Place of business (Cl. 1)<br>Eastrade Commodities Inc., Panama<br>Agents: Transclear SA, Nyon, Switzerland |
| 5. Vessel's name (Cl. 1)<br>MV ARHIMIDIS SB | 6. GRT/NRT (Cl. 1) |
| 7. Deadweight cargo carrying capacity in tons (abt.) (Cl. 1) | 8. Present position (Cl. 1)<br>Trading |
| 9. Expected ready to load (abt.) (Cl. 1) | |
| 10. Loading port or place (Cl. 1)<br>- See Clause 47 - | 11. Discharging port or place (Cl. 1)<br>- See Clause 47 - |
| 12. Cargo (also state quantity and margin in Owners' option, if agreed; if full and complete cargo not agreed state "part cargo") Cl. 1)<br>Cement in bulk 30,000 metric tons 10% more or less in Owners option<br>(See also clause 45) | |
| 13. Freight rate (also state if payable on delivered or intaken quantity) (Cl. 1)<br>- See Clause 21 - | 14. Freight payment (state currency and method of payment; also beneficiary and bank account) (Cl. 4)<br>- See Clause 21 - |
| 15. Loading and discharging costs (state alternative (a) or (b) of Cl. 5; also indicate if vessel is gearless)<br>- See Clause 24 - | 16. Laytime (if separate laytime for load. and disch. is greed, fill in a) and b). If total laytime for load. and disch., fill in c) only (Cl. 6)<br>a) Laytime for loading<br>- See Clause 24 -<br>b) Laytime for discharging<br>- See Clause 24 -<br>c) Total laytime for loading and discharging |
| 17. Shippers (state name and address) (Cl. 6) | |
| 18. Demurrage rate (loading and discharging) (Cl. 7)<br>- See Clause 25 - | 19. Cancelling date (Cl. 10)<br>- See Clause 45 - |
| 20. Brokerage commission and to whom payable (Cl. 14)<br>1.25 percent to Frontline Maritime Ltd. and 1.25 percent to Moa Shipping Co., Ltd. | |
| 21. Additional clauses covering special provision, if agreed.<br>Additional Clauses 18 to 47 both included, to be incorporated in this Charter Party and form fully part of this Charter Party | |

It is mutually agreed that this Contract shall be performed subject to the conditions contained in this Charter which shall include Part I as well as Part II. In the event of a conflict of conditions, the provisions of Part I shall prevail over those oof Part II to the extent of such conflict.

| Signature (Owners) | Signature (Charterers) |
|---|---|
| | |

Printed and sold by Fr. G. Knudtzon Ltd., 55 Toldbodgade, DK-1253 Copenhagen K, Telefax +45 33 93 11 84

EXHIBIT 3

**PART II**
**"Gencon" Charter (As Revised 1922 and 1976)**
Including "F.I.O." Alternative, etc.

1. It is agreed between the party mentioned in Box 3 as Owners of the ~~steamer or~~ motor-vessel named in Box 5, of the gross/net Register tons indicated in Box 6 and carrying about the number of tons of deadweight cargo stated in Box 7, now in position as stated in Box 8 and expected ready to load under this Charter about the date indicated in Box 9, and the party mentioned as Charterers in Box 4 that:
The said vessel shall proceed to the loading port or place stated in Box 10 or so near thereto as she may safely get and lie always afloat, and there load a full and complete cargo ~~(if shipment of deck cargo agreed same to be at Charterers' risk) as stated in Box 12 (Charterers to provide all mats and/or wood for dunnage and any separations required~~, the Owners allowing the use of any dunnage wood on board if required) which the Charterers bind themselves to ship, and being so loaded the vessel shall proceed ***with utmost despatch*** to the discharg-
ing port or place stated in Box 11 ~~as ordered on signing Bill of Lading~~ or so near thereto as she may safely get and lie always afloat and there deliver the cargo on being paid freight on delivered or intaken quantity as indicated in Box 13 at the rate stated in Box 13.

2. **Owners' Responsibility Clause**
Owners are to be responsible for loss of or damage to the goods or for delay in delivery of the goods only in case the loss, damage or delay has been caused by the improper or negligent stowage of the goods ~~(unless stowage performed by shippers/Charterers or their stevedores or servants)~~ or by personal want of due diligence on the part of the Owners or their Manager to make the vessel in all respects seaworthy and to secure that she is properly manned, equipped and supplied or by the personal act or default of the Owners or their Manager.
~~And the Owners are responsible for no loss or damage or delay arising from any other cause whatsoever, even from the neglect or default of the Captain or crew or some other person employed by the Owners on board or ashore for whose acts they would, but for this clause, be responsible, or from unseaworthiness of the vessel on loading or commencement of the voyage or at any time whatsoever. Damage caused by contact with or leakage, smell or evaporation from other goods or by the inflammable or explosive nature or insufficient package of other goods not to be considered as caused by improper or negligent stowage, even if in fact so caused.~~

3. **Deviation Clause**
The vessel has liberty to call at any port or ports in any order, for ~~any purpose~~ ***emergency situation only***, to sail without pilots, to tow and/or assist vessels in
all situations, and also to deviate for the purpose of saving life and/or property.

4. **Payment of Freight** ***(See Clause 21)***
~~The freight to be paid in the manner prescribed in Box 14 in cash without discount on delivery of the cargo at mean rate of exchange ruling on day or days of payment, the receivers of the cargo being bound to pay freight on account during delivery, if required by Captain or Owners.~~
~~Cash for vessel's ordinary disbursements at port of loading to be~~

**PART II**
**"Gencon" Charter (As Revised 1922 and 1976)**
Including "F.I.O." Alternative, etc.

~~advanced by Charterers if required at highest current rate of exchange, subject to two per cent, to cover insurance and other expenses.~~

**5. Loading/Discharging Costs** ***(See Clause 24)***

* *(a) Gross Terms*

~~The cargo to be brought alongside in such a manner as to enable vessel to take the goods with her own tackle. Charterers to procure and pay the necessary men on shore or on board the lighters to do the work there, vessel only heaving the cargo on board.~~

~~If the loading takes place by elevator, cargo to be put free in vessel's holds, Owners only paying trimming expenses.~~

~~Any pieces and/or packages of cargo over two tons weight, shall be loaded, stowed and discharged by Charterers at their risk and expense.~~

~~The cargo to be received by Merchants at their risk and expense alongside the vessel not beyond the reach of her tackle.~~

* *(b) F.i.o. and free stowed/trimmed*

The cargo shall be brought into the holds, loaded, stowed and/or trimmed and taken from the holds and discharged by the Charterers or their Agents, free of any risk, liability and expense whatsoever to the Owners.

~~The Owners shall provide winches, motive power and winchmen from the Crew if requested and permitted; if not, the Charterers shall provide and pay for winchmen from shore and/or cranes, if any. (This provision shall not apply if vessel is gearless and stated as such in Box 15).~~

* *indicate alternative (a) or (b), as agreed, in Box 15.*

**6. Laytime** ***(See Clause 24)***

* *(a) Separate laytime for loading and discharging*

~~The cargo shall be loaded within the number of running hours as indicated in Box 16, weather permitting, Sundays and holidays excepted, unless used, in which event time actually used shall count.~~

~~The cargo shall be discharged within the number of running hours as indicated in Box 16, weather permitting, Sundays and holidays excepted, unless used, in which event time actually used shall count.~~

* *(b) Total laytime for loading and discharging*

~~The cargo shall be loaded and discharged within the number of total running hours as indicated in box 16, weather permitting, Sundays and holidays excepted, unless used, in which event time actually used shall count.~~

*(c) Commencement of laytime (loading and discharging)*

Laytime for loading and discharging shall commence at 1 p.m. if notice of readiness is given before noon, and at 6 a.m. next working day if notice given during office hours after noon. Notice at loading port to be given to the Shippers named in Box 17 ***or WIBON, WIPON, WIFPON, WICCON***

~~Time actually used before commencement of laytime shall count.~~

Time lost in waiting for berth to count as loading or discharging time, as the case may be.

* *indicate alternative (a) or (b) as agreed, in Box 16.*

**7. Demurrage** ***(See Clause 25)***

~~Ten running days on demurrage at the rate stated in Box 18 per day or pro rata for any part of a day, payable day by day, to be allowed Merchants altogether at ports of loading and discharging.~~

**PART II**
**"Gencon" Charter (As Revised 1922 and 1976)**
Including "F.I.O." Alternative, etc.

**8. Lien Clause**
Owners shall have a lien on the cargo for freight, dead-freight, demurrage ~~and damages for detention~~. Charterers shall remain responsible for dead-freight and demurrage ~~(including damages for detention)~~, incurred at port of loading. Charterers shall also remain responsible for freight and demurrage ~~(including damages for detention)~~ incurred at port of discharge, but only to such extent as the Owners have been unable to obtain payment thereof by exercising the lien on the cargo.

**9. Bill of Lading**
The Captain to sign Bill of Lading ***in accordance with Mate's and tally clerks receipt's.*** ~~at such rate of freight as presented without prejudice to this Charterparty, but should the freight by Bills of Lading amount to less than the total chartered freight the difference to be paid to the Captain in cash on signing Bills of Lading.~~

**10. Cancelling Clause**
~~Should the vessel not be ready to load (whether in berth or not) on or before the date indicated in Box 19, Charterers have the option of canceling this contract, such option to be declared, if demanded, at least 48 hours before vessel's expected arrival at port of loading. Should the vessel be delayed on account of average or otherwise, Charterers to be informed as soon as possible, and if the vessel is delayed for more than 10 days after the day she is stated to be expected ready to load, Charterers have the option of canceling this contract, unless a canceling date has been agreed upon~~.

**11. General Average**
General average to be settled ***and adjusted in London*** according to York-Antwerp Rules, ~~1974~~ ***as amended in 1990,*** Proprietors of cargo to pay the cargo's share in the general expenses even if same have been necessitated through neglect or default of the Owners' servants (see clause 2).

**12. Indemnity**
Indemnity for non-performance of this Charterparty, proved damages, not exceeding estimated amount of freight.

**13. Agency**
In every case the ~~Owners~~ ***Charterers*** shall appoint his own ~~Broker or~~ Agent both at the port of loading and the port of discharge.

**14. Brokerage**
A brokerage commission at the rate stated in Box 20 on the freight, ***deadfreight and demurrage*** earned is due to the party mentioned in Box 20.
~~In case of non-execution at least ⅓ of the brokerage on the estimated amount of freight and dead-freight to be paid by the Owners to the Brokers as indemnity for the latter's expenses and work. In case of more voyages the amount of indemnity to be mutually agreed.~~

**15. GENERAL STRIKE CLAUSE**
Neither Charterers nor Owners shall be responsible for the con-

**PART II**
**"Gencon" Charter (As Revised 1922 and 1976)**
Including "F.I.O." Alternative, etc.

sequences of any strikes or lock-outs preventing or delaying the fulfillment of any obligations under this contract.
If there is a strike or lock-out affecting the loading of the cargo, or any part of it, when vessel is ready to proceed from her last port or at any time during the voyage to the port or ports of loading or after her arrival there, Captain or Owners may ask Charterers to declare, that they agree to reckon the laydays as if there were no strike or lock-out. Unless Charterers have given such declaration in writing (by telegram, if necessary) within 24 hours, Owners shall have the option of canceling this contract. If part cargo has already been loaded, Owners must proceed with same, (freight payable on loaded quantity only) having liberty to complete with other cargo on the way for their own account.
If there is a strike or lock-out affecting the discharge of the cargo on or after vessel's arrival at or off port of discharge and same has not been settled within 48 hours, Receivers shall have the option of keeping vessel waiting until such strike or lock-out is at an end against paying half demurrage after expiration of the time provided for discharging, or of ordering the vessel to a safe port where she can safely discharge without risk of being detained by strike or lock-out. Such orders to be given within 48 hours after Captain or Owners have given notice to Charterers of the strike or lock-out affecting the discharge. On delivery of the cargo at such port, all conditions of this Charter party and of the Bill of Lading shall apply and vessel shall receive the same freight as if she had discharged at the original port of destination, except that if the distance of the substituted port exceeds 100 nautical miles, the freight on the cargo delivered at the substituted port to be increased in proportion.

16. **War Risks ("Voywar 1950")**
(1) In these clause "War Risks" shall include any blockade or any action which is announced as a blockade by any Government or by any belligerent or by any organized body, sabotage, piracy, and any actual or threatened war, hostilities, warlike operations, civil war, civil commotion, or revolution.
(2) If at any time before the Vessel commences loading, it appears that performance of the contract will subject the Vessel or her Master and crew or her cargo to war risks at any stage of the adventure, the Owners shall be entitled by letter or telegram dispatched to the Charterers, to cancel this Charter.
(3) The Master shall not be required to load cargo or to continue loading or to proceed on or to sign Bill(s) of Lading for any adventure on which or any port at which it appears that the Vessel, her Master and crew or her cargo will be subjected to war risks. In the event of the exercise by the Master of his right under this Clause after part or full cargo has been loaded, the Master shall be at liberty either to discharge such cargo at the loading port or to proceed therewith. In the latter case the Vessel shall have liberty to carry other cargo for Owner's benefit and accordingly to proceed to and load or discharge such other cargo at any other port or ports whatsoever, backwards or forwards, although in a contrary direction to or out of or beyond the ordinary route. In the event of the Master electing to proceed with part cargo under this Clause freight shall in any case be payable on the quantity delivered.
(4) If at the time the Master elects to proceed with part of full cargo under Clause 3, or after the Vessel has left the loading port, or the last of the loading ports, if more than one, it appears that further

**PART II**
**"Gencon" Charter (As Revised 1922 and 1976)**
Including "F.I.O." Alternative, etc.

performance of the contract will subject the Vessel, her Master and crew or her cargo, to war risks, the cargo shall be discharged, or if the discharge has been commenced shall be completed, at any safe port in vicinity of the port of discharge as may be ordered by the Charterers. If no such orders shall be received from the Charterers within 48 hours after the Owners have despatched a request by telegram to the Charterers for the nomination of a substitute discharging port, the Owners shall be at liberty to discharge the cargo at any safe port which they may, in their discretion, decide on and such discharge shall be deemed to be due fulfilment of the contract of affreightment. In the event of cargo being discharged at any such other port, the Owners shall be entitled to freight as if the discharge had been effected at the port or ports named in the Bill(s) of Lading or to which the Vessel may have been ordered pursuant thereto.

(5) (a) The Vessel shall have liberty to comply with any directions or recommendations as to loading, departure, arrival, routes, ports of call, stoppages, destination, zones, waters, discharge, delivery or in any other wise whatsoever (including any direction or recommendation not to go to the port of destination or to delay proceeding thereto or to proceed to some other port) given by any Government or by any belligerent or by any organized body engaged in civil war, hostilities or warlike operations or by any person or body acting or purporting to act as or with the authority of any Government or belligerent or of any such organized body or by any committee person having under the terms of the war risks insurance on the Vessel, the right to give any such directions or recommendations, if by reason of or in compliance with any such direction or recommendation, anything is done or is not done, such shall not be deemed a deviation.

(b) If, by reason of or in compliance with any such directions or recommendations, the Vessel does not proceed to the port or ports named in the Bill(s) of Lading or to which she may have been ordered pursuant thereto, the Vessel may proceed to any port as directed or recommended or to any safe port which the Owners in their discretion may decide on and there discharge the cargo. Such discharge shall be deemed to be due fulfilment of the contract of affreightment and the Owners shall be entitled to freight as if discharge had been effected at the port or ports named in the Bill(s) of Lading or to which the Vessel may have been ordered pursuant thereto.

(6) All extra expenses(including insurance costs) involved in discharging cargo at the loading port or in reaching or discharging the cargo at any port as provided in Clause 4 and 5 (b) hereof shall be paid by the Charterers and/or cargo owners, and the Owners shall have a lien on the cargo for all moneys due under these Clauses.

**17. GENERAL ICE CLAUSE**

*Port of Loading*

(a) In the event of the loading port being inaccessible by reason of ice when vessel is ready to proceed from her last port or at any time during the voyage or on vessel's arrival or in case frost sets in after vessel's arrival, the Captain for fear of being frozen in is at liberty to leave without cargo, and this Charter shall be null and void.

(b) If during loading the Captain, for fear of vessel being frozen in, deems it advisable to leave, he has liberty to do so with what cargo he has on board and to proceed to any other port or ports with

**PART II**
**"Gencon" Charter (As Revised 1922 and 1976)**
Including "F.I.O." Alternative, etc.

Option of completing cargo for Owners' benefit for any port or ports including port of discharge. Any part cargo thus loaded under this Charter to be forwarded to destination at vessel's expense but against payment of freight, provided that no extra expenses be thereby caused to the Receivers, freight being paid on quantity delivered (in proportion if lumpsum), all other conditions as per Charter.
(c) In case of more than one loading port, and if one or more of the ports are closed by ice, Captain or Owners to be at liberty either to load the part cargo at the open port and fill up elsewhere for their own account as under section (b) or to declare the Charter null and void unless Charterers agree to load full cargo at the open port.
(d) This Ice Clause not to apply in the Spring.

*Port of discharge*
(a) Should ice (except in the Spring) prevent vessel from reaching port of discharge Receivers shall have the option of keeping vessel waiting until the re-opening of navigation and paying demurrage, or of ordering the vessel to a safe and immediately accessible port where she can safely discharge without risk of detention by ice. Such orders to be given within 48 hours after Captain or Owners have given notice to Charterers of the impossibility of reaching port of destination.
(b) If during discharging the Captain for fear of vessel being frozen in deems it advisable to leave, he has liberty to do so with what cargo he has on board and to proceed to the nearest accessible port where she can safely discharge.
(c) On delivery of the cargo at such port, all conditions of the Bill of Lading shall apply and vessel shall receive the same freight as if she had discharged at the original port of destination, except that if the distance of the substituted port exceed 100 nautical miles, the freight one the cargo delivered at the substituted port to be increased in proportion.

ADDITIONAL CLAUSES TO MV "ARHIMIDIS SB"/EASTRADE
CHARTER PARTY DATED 16TH SEPTEMBER, 2005

**CLAUSE 18**
Vessel to be presented for loading with holds clean/swept/dry and free from residues of previous
cargoes, suitable in all respects to receive the intended cargo to the satisfaction of
Charterers/Shippers inspectors.
Hatchcovers to be in satisfactory condition to ensure water tightness.
Charterers may order hose test if required at their time and expenses.

**CLAUSE 19**
Unless a vessel has cargo inlets suitable for shippers' loading equipment, the Owners to permit the
cutting of suitable cargo inlets at Shippers/Charterers expenses/time.
The Owners option to have their class surveyor to follow cutting/opening and closing of such holes
but cost for class surveyor to be for Owners account.

**CLAUSE 20**
Vessel/Owners to be responsible for any damage to the cargo by cause of water ingress through
ventilators or leakage due to improper hatch cover sealing or leakage of water or oil from pipes
and/or tanks or due to improper/careless cutting and rewelding of cargo inlets.

**CLAUSE 21**
Freight US$36.50 per metric-ton free in and out trimming basis 1/1 basis.

Freight rates are based on "Free Disbursements at discharge port for Owners excluding Agency
Fees.

Freight payment 95% less 3.75% commission (2.5% address to Charterers plus 1.25% to
Frontline) within 3 banking days from signing 'Clean on board' and 'Freight Prepaid' Bills of Lading.

Bills of Ladings to be released by Owners to Charterers' representative at loading port upon
Charterers faxing to Owners copy of banker swift providing that 95% less permitted deductions
have been irrevocably remitted. Clean Bills of Lading will be issued provided no remarkes on
Mate's Receipts on the condition of the cargo.

5% balance freight less despatch plus demurrage, if any, to be settled after right and true delivery
of the cargo at destination within 30 days upon submitting usual copies of Statement of fact/Notice
of Readiness at loading and discharging port duly signed by Master/Agents/Shippers/Receivers.

Freight is deemed earned as cargo is loaded on board, discountless and non-returnable, vessel
and/or cargo lost or not lost.

Freight to be paid to:

JPMORGAN CHASE BANK, NEW YORK
For credit of Korea Exchange Bank
(Swift Code : KOEXKRSE)
in favor of SK Shipping Co., Ltd. Seoul Korea
(A/C, 030-JCD-100121) with Korea Exchange
Bank, Namdaemun Branch, Seoul Korea

ADDITIONAL CLAUSES TO MV "ARHIMIDIS SB"/EASTRADE
CHARTER PARTY DATED 16TH SEPTEMBER, 2005

---

**CLAUSE 22**
Vessel to provide sufficient light day and night on Saturdays, Sundays, holidays, if required, free of expense to Shippers/Charterers/Receivers.

**CLAUSE 23**
Quantity loaded to be determined by a draft survey report established by Shippers and SGS or their representatives and Master at Charterers' expense and countersigned by, if he agrees Master showing same weight as Bills of Lading. Any dispute to be settled prior to departure from the load port.

**CLAUSE 24**
Cargo to be loaded at an average rate of 8,000 metric-tons for Rizhao per weather working day of 24 consecutive hours Sundays and holidays included, except super holidays, unless used.

Cargo to be discharged by Charterers/Receivers at an average rate of 3,000 metric-tons per weather working day of 24 consecutive hours Saturdays, Sundays and holidays included, except super holidays, unless used.

Notice of Readiness to be tendered at any time, day or night, Sundays/holidays included after vessel arrival (WIPON, WIBON, WIFPON, WICON). Notice of Readiness may be tendered by cable, telex or fax.

Laytime to commence 12 hours after Notice of Readiness is tendered unless sooner commence discharging.

Time used for shifting from anchorage to loading/discharging berth not to count as laytime unless vessel is already on demurrage.

Time from customary waiting place to discharging berth not to count.

Shifting between berths if any to be for owners' account and time to count.

If vessel fails to obtain free pratique, time not to count from the moment vessel failed obtaining Free Pratique until Free Pratique is actually granted.

If vessel fails to pass cargo holds survey, time will not count from the moment vessel is rejected until she actually passes the holds survey.

Laytime to be non-reversible.

**CLAUSE 25**
Demurrage is to be paid at the rate of US$18,000 per day or pro rata at loading/discharging port. Demurrage at both ends is payable by Charterers after presentation of Statement of Facts, duly signed by Master/Shippers/Receivers or their representatives and agents, together with Notice of Readiness and Owners' Time Sheets.

**CLAUSE 26**
Despatch at half demurrage rate for working time saved at loading and discharging port is payable by Owners to Charterers.

**ADDITIONAL CLAUSES TO MV "ARHIMIDIS SB"/EASTRADE CHARTER PARTY DATED 16TH SEPTEMBER, 2005**

---

**CLAUSE 27**
Agents to be Charterers' agents at both ends.

-Agents at loading port :

M/S SINOAGENT RIZHAO
TEL: 86-633-22119706
FAX : 86-633-8331998
EMAIL: sinorz@vip.sina.com.cn (NOT AVAILABLE)
huanglijuan@sinotrans.com
wanghongna@sinotrans.com
PERSON IN CHARGE : MS WANG HOUGNA - MOBILE: 86 133 7633 9099

-Agents at discharging port :

Jaros Shipping Line Limited
Jaros Base
Km 2 Iwofe/College of Education Raod
Rumueirikom
P M B 6150
Port Harcourt
Tel: +234-84-238926, 236338
Fax: +234-84-236338
for attention of: Chief Chris Udomkpong

**CLAUSE 28**
Owners/Master to give 6/5/3/2/1 day(s) notice or ETA at each loading port to:

1) TRANSCLEAR NYON/SWITZERLAND (CABLE)
OR EMAIL : info@transclear.ch
OR FAX : 4122-990 0191

2) CHARTERERS NOMINATED AGENTS : Details as above

Upon sailing from loading port, Master to cable quantity loaded, distribution holdwise, Bills of Lading date and number, sailing time load port and ETA discharge port and further 15/10/7/5/3/2/1 day(s) ETA discharge port notice to be given by Owners/Master to :

1) TRANSCLEAR NYON/SWITZERLAND (CABLE)
OR EMAIL : info@transclear.ch
OR FAX : 4122-990 0191

2) CHARTERERS NOMINATED AGENTS : Details as above

Latest on completion loading, Owners to supply copies of following documents which are required for SEN application in Nigeria :

Classification certificate
Registry certificate
P+I certificate of entry
List of ports of call
Stores list

**ADDITIONAL CLAUSES TO MV "ARHIMIDIS SB"/EASTRADE CHARTER PARTY DATED 16TH SEPTEMBER, 2005**

---

Crew list
Narcotics list
Nil list

**CLAUSE 29**
Vessel's description:

M/V ARHIMIDIS SB
DWAT 45,320 MT ON 11,276M SSW
FLAG CYPRUS - BLT 09/1995 JAPAN
LOA 189,60 M/BREADTH MOULDED 30,50 M - 5 HO/HA
GRAIN CAPACITY 56,457 M3/BALE CAPACITY 55,364 M3
CO2 FITTED IN HOLDS
CRANE MAKER TSUJI / 4 SETS - TYPE ELECTRO HYDRAULIC
CAPA/SET SWL 30 MT AT 24 M BOOM LENGTH

**CLAUSE 30**
Stevedores damages are to be settled directly between Owners and stevedores.
All damages to be notified to stevedores in writing 24 hours after occurence of such damage or as soon as discovered but not later than sailing from the port of occurence. Proved damages are to be repaired by the stevedores without intervention of the Charterers/Shippers/Receivers. But Charterers to assist Owners in settling stevedores damages accordingly.

**CLAUSE 31**
Any taxes/dues/wharfage on cargo to be for Charterers' account,
Any taxes/dues on vessel/freight to be for Owners' account.

At Port Harcourt, Owners are free of entire disbursement accounts including inward taxes/etc but for Charterers' account, excluding agency fees USD 2,500 which to be for Owners' account. Should vessel be delayed/detained due to Charterers to be ultimatively responsible for any and all costs incurred and vessel to be on demurrage.

**CLAUSE 32**
Opening and closing of hatches to be performed by vessel's crew provided shore regulations permit. Otherwise shore labour shall be employed and paid by Charterers/Shippers/Receivers.

**CLAUSE 33**
Owners are free of extra insurance premium.

**CLAUSE 34**
Owners guarantee that their vessel is fully P + I covered by UK P&I CLUB and will remain so during the entire duration of this Charter.

**CLAUSE 35**
Deleted.

**ADDITIONAL CLAUSES TO MV "ARHIMIDIS SB"/EASTRADE CHARTER PARTY DATED 16TH SEPTEMBER, 2005**

---

**CLAUSE 36**
Overtime to be for account of party ordering same. If ordered by port authorities same to be for Charterers/Shippers/Receivers account. Overtime for ship's officers and crew always to be for Owners' account.

**CLAUSE 37**
New Both-To-Blame Collision Clause, General Average and The New Jason Clause, General Clause Paramount and P + I Bunker Deviation Clause to be incorporated in this Charter-Party and Bills of Lading issued thereunder.

**CLAUSE 38**
All disputes arising under this contract which cannot be amicably resolved shall be referred to Arbitration in London. Unless the parties agree upon a sole Arbitrator, one to be appointed by each of the parties who will have the power to appoint an umpire if they disagree. The Arbitrators and the umpire shall be members of the London Maritime Arbitrators' Association.

The contract is governed by English Law and ther shall apply to Arbitrators proceedings under this clause terms of the London Maritime Arbitrators' Association at the time when the Arbitration proceedings are commenced.

LMAA rules to apply.

General Average in London, UK, English law to apply.

**CLAUSE 39**
Owners guarantee that vessel shall be kept during the whole duration of the voyage suitable and in good seaworthy condition and shall have all certificates in order and valid.

**CLAUSE 40**
Any of the following clauses are excepted, regardless of where they occur. Strikes or lockouts at the Shippers' or suppliers' mines or factory, on railways, trucks or barges, or at the ports of loading or discharging, war or effects of war, revolution, civil commotion, breakdown on or stoppage or shortage of railways, trucks or barges, interruptions, stoppage or breakdowns at the factory of the Shippers' or suppliers' now or hereafter under contract, stoppage or destruction of goods in transit, epidemic, frost, fire, cyclones, storms, floods, earthquakes, unavaidable accidents to machinery or equipment, or other unavoidable hindrances or delays in mining, manufacturing, transporting, loading, discharging or receiving the material or goods, restraints of established authorities, and delay caused by the vessel, Master or crew, and any other causes whatsoever or howsoever arising happening without the fault and/or responsiblity of the Charterers preventing or delaying the mining of manufacturing, supplying, transporting, loading, discharing or receiving of the cargo. Charterers shall not be liable for any loss or damage resulting from any such excepted causes and time lost by reason thereof shall not count as used time or time on demurrage.

**CLAUSE 41**
Owners and/or demised Charterers warrant that vessel has no encumbrances which may cause her arrest or detention.

**ADDITIONAL CLAUSES TO MV "ARHIMIDIS SB"/EASTRADE CHARTER PARTY DATED 16TH SEPTEMBER, 2005**

---

**CLAUSE 42**
Owners' P + I Club to confirm to Charterers in writing that payment of premiums is up to date.

**CLAUSE 43**
Deleted.

**CLAUSE 44**
Any negotiations and/or eventual fixture(s) to remain strictly private and confidential between the Owners/Charterers and their brokers who are involved.

**CLAUSE 45**
Cement in bulk 30,000 metric tons 10% more or less in Owners option

Laycan : 24-30 September, 2005

**CLAUSE 46**
If grab fitted ships with either hydraulically operated grabs or remote controlled grabs, Grabs outreach to be minimum 8.5 meters

**CLAUSE 47**
Loading ports :

1 safe berth or port Rizhao, China

Discharging port :

1 safe berth or port, Port Harcourt, Nigeria (9.0 meters fresh water draft)

Discharging to be done by Vessel's own gear and grabs. However no craneman available from the vessel, Charterers to employ competent shorehands at their risk and expense.

(END)



19th Fl. SK Namsan Green Bldg. 267, 5-Ga, Namdaemun-Ro,
Chung-Gu, Seoul, Korea P.O.Box : K.P.O.Box 2732
Tel : (02) 3788-8400 Fax : (02) 3788-8700

# INVOICE

**B/L DATE : 27TH SEP, 2005**

Our Ref No. : ARHI-0208-01

Messrs. **EAST TARDE COMMODITIES**

Date: 9th Feb.,2006

| PARTICULARS | AMOUNT(USD) |
|---|---|
| ***Re : DEM/DES OUTSTANDING FOR MV "ARHIMIDIS SB"*** | |
| ◈ Cargo : Cement in Bulk | |
| ◈ Load/DisPorts : Rizhao / Port Harcourt | |
| ◈ B/L Quantity : 32,751.000MT | |
| ◈ Despatch Money at Rizhao<br>Laytime saved 0.701514Days x USD9,000 | -6,313.62 |
| ◈ Demurrage at Port Harcourt<br>Laytime lost 38.139250Days x USD18,000 | 686,506.50 |
| ◈ Less 3.75 % Comm (incl. brokerage 1.25%) on Demurrage | -25,743.99 |
| **T O T A L** | 654,448.89 |

▶ *IN ORDER TO PREVENT FROM MIS-HANDLING OR DELAYED PROCESSING, PLEASE MAKE SURE TO INSTRUCT YOUR BANK TO QUOTE OUR REFERENCE NUMBER WHEN MAKING PAYMENT ORDER.*

Please remit the above amount to :

The Chase Manhattan Bank, New York, USA
For credit of Korea Exchange Bank
(Swift Code : KOEXKRSE)
in favor of SK Shipping Co., Ltd. Seoul Korea
(A/C, 030-JCD-100121) with Korea Exchange
Bank, Namdaemun Branch, Seoul Korea

Yours faithfully,

SK Shipping Co., Ltd.

YJ Kim / Team Manager
Tramper Team - Bulk Carrier Business Div.

EXHIBIT 4



19th Fl. Namsan Green Bldg. 267, 5ga, Namdaemun-Ro,
Chung-Gu Seoul, Korea C.P.O.Box 2732
Tel : (02) 3788-8697Fax : (02) 3788-8700
e-mail: handy@skshipping.com, hhyoo@skshipping.com

## LAYDAYS STATEMENT

TO : East Trade Commodities
MV : ARHIMIDIS SB
DISCHG PORT : Port Harcourt
B/L DATE : 2005-09-27

DATE : 2006-01-04

| Cargo | Quantity | Turn time | Load'g/Disch'g rate as per C/P | Allowed time |
|---|---|---|---|---|
| Cement | 32,751 MT | | 3,000 mt pwwd shinc | 10D 22:00 |

**Dischg Port** : Port Harcourt
o Arrived port : 05-10-31 12:30
o NOR Tender : 05-10-31 12:30
o NOR Accept : 05-11-01 00:30

o Load'g comm : 05-12-11 19:40
o Load'g compt : 05-12-20 09:30
o Laytime comm : 05-11-01 00:30

| Day of Week | Laytime | | Description | Time Used |
|---|---|---|---|---|
| | From | To | | |
| TUE | 2005-11-01 0:30 | 2005-12-20 9:30 | Laytime count | 49D 9:00 |

| Exemption | From | To | Description | Time Used |
|---|---|---|---|---|
| | 2005-11-01 00:30 | 2005-11-02 00:00 | | 0D 23:30 |
| | 2005-11-02 00:00 | 2005-11-11 22:30 | **ON DEM** | 9D 22:30 |
| | 2005-11-11 22:30 | 2005-11-19 10:16 | | 7D 11:46 |
| | 2005-11-19 12:50 | 2005-11-20 00:00 | SHIFTING TO BONNY TOWN | 0D 11:10 |
| | 2005-11-20 00:00 | 2005-12-11 11:40 | | 21D 11:40 |
| | 2005-12-11 16:45 | 2005-12-12 00:00 | BERTHING TO IBETO JETTY | 0D 7:15 |
| | 2005-12-12 00:00 | 2005-12-20 09:30 | | 8D 9:30 |
| | | | TOTAL | 49D 1:21 |

| | |
|---|---|
| Laytime allowed | 10.917000 Days<br>10D 22:00 |
| Laytime used | 49.056250 Days<br>49D 1:21 |
| Laytime saved | 0.000000 Days<br>0D 0:00 |
| Laytime lost | 38.139250 Days<br>7D 3:20 |

| | |
|---|---|
| Demmurage rate | US$ 18,000 / Day |
| Despatch rate | US$ 9,000 / Day |
| Demurrage (US$ Bases) | **US$ 686,506.50** |

**Please check and confirm us for the soonest accounts settlement.**

***Yours faithfully,***



19th Fl. Namsan Green Bldg. 267, 5ga, Namdaemun-Ro,
Chung-Gu Seoul, Korea C.P.O.Box 2732
Tel : (02) 3788-8697 Fax : (02) 3788-8700
e-mail: handy@skshipping.com, hhyoo@skshipping.com

## LAYDAYS STATEMENT

TO : East Trade Commodities
MV : ARHIMIDIS SB
LOADG PORT : RIZHAO
B/L DATE : 2005-09-27

DATE : 2006-01-04

| Cargo | Quantity | Turn time | Load'g/Disch'g rate as per C/P | Remark |
|---|---|---|---|---|
| Cement | 32,751 MT | | 8,000 mt pwwd shinc | 4D 2:15 |

**Loading Port** : Rizhao

o Arrived port : 05-09-22 20:50
o NOR Tender : 05-09-22 20:00
o NOR Accept : 05-09-23 08:00

o Load'g comm : 05-09-23 14:50
o Load'g compt : 05-09-27 20:55
o Laytime comm : 05-09-23 08:00

| Day of Week | Laytime | | Description | Time Used |
|---|---|---|---|---|
| | From | To | | |
| FRI | 2005-09-23 8:00 | 2005-09-27 20:55 | Laytime count | 4D 12:55 |

| Exemption | From | To | Description | Time Used |
|---|---|---|---|---|
| SUN | 2005-09-25 07:35 | 2005-09-25 20:15 | Rain | 0D 12:40 |
| MON | 2005-09-26 16:40 | 2005-09-27 00:00 | Rain | 0D 7:20 |
| TUE | 2005-09-27 00:00 | 2005-09-27 07:30 | Rain | 0D 7:30 |
| | | | EXEMPTION TOTAL | 1D 3:30 |
| | | | LAYTIME TOTAL | 3D 9:25 |

| | | |
|---|---|---|
| Laytime allowed | 4.093875 Days | 4D 2:15 |
| Laytime used | 3.392361 Days | 3D 9:25 |
| Laytime saved | 0.701514 Days | 0D 16:50 |
| Laytime lost | 0.000000 Days | 0D 0:00 |

| | |
|---|---|
| Demmurage rate | US$ 18,000 / Day |
| Despatch rate | US$ 9,000 / Day |
| Despatch (US$ Bases) | **US$ 6,313.62** |

**Please check and confirm us for the soonest accounts settlement.**

*Yours faithfully,*